UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| JOHN S. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:15-cv-00026-RLY-WGH |
| | ) | |
| HARVEST MANAGEMENT SUB TRS | ) | |
| CORP. - HOLIDAY RETIREMENT, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO COMPEL ARBITRATION**

**I. Introduction**

John S. Johnson, Plaintiff, filed this racial discrimination action against Harvest Management Sub TRS Corp. – Holiday Retirement, Defendant, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. This matter now comes before the court on Defendant's Motion to Compel Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. For the reasons set forth below, the court **GRANTS** Defendant's motion.

**II. Background**

Plaintiff began working for Defendant in January 2010. In December 2013, Defendant used a third-party vendor to send the Mutual Agreement to Arbitrate Employment-Related Disputes ("Agreement") to all current employees via U.S. Mail. The Agreement provides, in relevant part, "The Company and Associate hereby agree that any dispute between Associate and the Company . . . that is related to, arises from, or

1

is in connection with Associate's employment . . . must be submitted for resolution by mandatory, binding arbitration." (Filing No. 15-1, Agreement). The Agreement further states,

> You have the right to opt-out of this Agreement, as provided on the attached opt-out form. If you do not wish to be bound by the binding arbitration and class action waiver in this Agreement, you must notify the Company in writing, and the Company must receive your notification, before this Agreement goes into effect on January 6, 2014. . . . **If you do not opt out in this manner, your acceptance of employment or continued employment with the Company will mean that you accept the terms of this Agreement. No signature is required. Absent an effective opt-out notification, this Agreement will go into effect on January 6, 2014.**

(*Id.*) (emphasis original). As the language quoted above indicates, an opt-out form was included in the mailing. Plaintiff's mailing was not returned as undeliverable.

In addition to mailing the Agreement to all current employees, Defendant posted the documents contained within the mailing on its internal portal. All employees, including Plaintiff, had access to the documents via this website until April 18, 2014. Approximately a week after mailing the documents, Defendant sent an e-mail message to all managers suggesting that they remind employees of the Agreement. Defendant also included information about the Agreement in its monthly publication, which was e-mailed to Plaintiff on December 23, 2014.

Plaintiff did not return his opt-out form.

Plaintiff filed this action on March 10, 2015. Defendant filed its Motion to Compel Arbitration on June 4, 2015.

2

## III. Discussion

### A. Agreements to Arbitrate

In considering whether the parties agreed to arbitrate this matter, the court applies "ordinary state-law principles that govern the formation of contracts." *Druco Rests., Inc. v. Steak N Shake Enters.*, 765 F.3d 776, 781 (7th Cir. 2014). Indiana and federal courts alike recognize that arbitration provisions are valid and enforceable. *Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 71 (Ind. Ct. App. 2014) ("Both Indiana and federal law recognize a strong public policy favoring enforcement of arbitration agreements."). When an Indiana court construes an arbitration agreement, "every doubt is to be resolved in favor of arbitration." *Nightingale Home Healthcare, Inc. v. Helmuth*, 15 N.E.3d 1080, 1085 (Ind. Ct. App. 2014). *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

### B. Compelling Arbitration

Section 4 of the FAA authorizes a federal court to "make an order directing the parties to proceed to arbitration" upon a showing that "the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. The Seventh Circuit has interpreted this statute to mean that in order to compel arbitration, "a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich American Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). This court is required to order arbitration "unless it may be said with positive assurance that

the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

Only the first of the three elements outlined in *Zurich American Insurance Company* is disputed. The parties disagree as to whether there is a valid agreement to arbitrate based upon Indiana principles of contract law. In Indiana, the "basic elements of a contract" are "an offer, acceptance, a manifestation of mutual assent, and consideration." *McIntire v. Franklin Twp. Cmty. Sch. Corp.*, 15 N.E.3d 131, 134 (Ind. Ct. App. 2014).

Plaintiff's principal argument is that Defendant cannot demonstrate a meeting of the minds. *See Ind. Dep't of Corr. v. Swanson Servs. Corp.*, 820 N.E.2d 733, 737 (Ind. Ct. App. 2005) ("[A] meeting of the minds between the contracting parties is essential to the formation of a contract."). This argument is a non-starter. Initially, Plaintiff avers, through an affidavit, that he never received the Agreement by U.S. Mail. If Plaintiff never received the Agreement and had no knowledge of it, the court cannot enforce it against him, or so the argument goes. Defendant responds that it attempted to inform Plaintiff about the Agreement in four different ways, as discussed above. To bolster that claim, Defendant submitted evidence to show that it did, in fact, mail the Agreement to Plaintiff via U.S. Mail. (*See* Filing No. 15-1, Declaration of Daniel Weberski). As Defendant emphasizes, Plaintiff does not contend that Defendant sent the Agreement to the wrong address. Furthermore, Defendant demonstrated that it successfully sent a class action opt-in consent to Plaintiff at the same address. (*See* Filing No. 27-2, Affidavit of

Michele Stone). Plaintiff signed that consent and returned it, indicating that he does receive mail at that address. According to the Supreme Court, "The rule is well settled that proof that a letter properly directed was placed in a post office, creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. United States*, 285 U.S. 427, 430 (1932). *See Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 476 (7th Cir. 2009) ("[I]t is well-established that evidence of proper mailing raises a rebuttable presumption of delivery.").

In light of Defendant's evidence, the court must apply a rebuttable presumption that Plaintiff did actually receive the Agreement. *Hagner*, 285 U.S. at 430. While Plaintiff claims just the opposite, he offers no evidence in support of that statement besides his own affidavit. In the context of an undocumented immigrant claiming she never received a notice to appear before an immigration judge, the Seventh Circuit concluded, "[A] bare, uncorroborated, self-serving denial of receipt, even if sworn, is weak evidence. Nothing is simpler than submitting an affidavit in which one attests that one didn't receive a particular piece of mail." *Joshi v. Ashcroft*, 389 F.3d 732, 735-36 (7th Cir. 2004). Despite the different circumstances, the language from *Joshi* is applicable here. Plaintiff's word, in and of itself, cannot overcome the presumption of delivery. If the presumption could be defeated that easily, it would serve no purpose. A fellow district court in the Seventh Circuit recently considered this precise argument under the same circumstances as the instant case. *See Mete v. Sears Holdings Corp.*, No. 14 C 4169, 2014 U.S. Dist. LEXIS 163344 (N.D. Ill. Nov. 21, 2014). In that case, the court found that the plaintiff had overcome the presumption of delivery, but the plaintiff

5

"ha[d] done more than generally deny the receipt of the Agreement." *Id.* at *10. Specifically, the plaintiff submitted evidence showing that, prior to her lawsuit, she never received her Form W-2 even though the defendant allegedly sent it to that same home address. *Id.* at *11. In this case, Plaintiff has not offered any evidence outside of a general denial of receipt. That will not suffice. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735-36 (7th Cir. 2002) ("But Tinder's only evidence that she never received notice . . . was her own affidavit in which she avers that she 'does not recall seeing or reviewing the Arbitration Program brochure . . .,' and this does not raise a genuine issue of material fact.").

Defendant also presents evidence that it sent the December 23, 2013 newsletter, which contained a reminder about the Agreement, to Plaintiff's e-mail address. Brett Donnelly, Defendant's Computer Systems Administrator, stated, through an affidavit, that the newsletter was received in Plaintiff's inbox just three minutes after it was sent. (Filing No. 27-2, Affidavit of Brett Donnelly). Again, Plaintiff simply asserts that he did not receive the e-mail. He does not, for example, contend that Defendant used the wrong e-mail address. Although the Seventh Circuit has not directly addressed whether the presumption of delivery should be applied to electronic communication, Defendant invites the court to do just that and cites to a decision from the Eighth Circuit Court of Appeals in support. *See Am. Boat Co., Inc. v. Unknown Sunken Barge*, 418 F.3d 910, 914 (8th Cir. 2005) ("[A] presumption of delivery should apply to e-mails."). The court sees no principled reason why the presumption should not apply to e-mail, and Plaintiff offers no argument against this application. Plaintiff fails to provide any evidence to

6

rebut the presumption, so the court finds that he did receive this e-mail reminder about the Agreement. Thus, at the very least, Plaintiff received the Agreement via U.S. Mail and received a reminder about the Agreement via e-mail. It is also possible that he saw the documents posted on Defendant's internal portal and/or his manager spoke with him about the Agreement after being encouraged to do so by Defendant. The evidence leaves no doubt that Plaintiff was aware of the Agreement, even if he did not read it. *See Hill v. Gateway 2000*, 105 F.3d 1147, 1148 (7th Cir. 1997) ("A contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome.").

    Plaintiff continues that even if the court finds he did receive the Agreement, mere receipt of the Agreement does not constitute acceptance on his part. According to Plaintiff, his continued employment and failure to opt-out cannot be equated to assent. The court disagrees. Plaintiff notes that he did not sign the Agreement, but that is not required under Indiana law: "[T]he validity of a contract is not dependent upon the signature of the parties, unless such is made a condition of the agreement." *Nationwide Ins. Co. v. Heck*, 873 N.E.2d 190, 196 (Ind. Ct. App. 2007). Rather, "Assent may be expressed by acts which manifest acceptance." *Id.* Here, Plaintiff expressed assent to the Agreement by not opting-out and continuing his employment with Defendant for several months. The Agreement explicitly states in bolded letters, "If you do not opt out [by providing written notification], your acceptance of employment or continued employment with the Company will mean that you accept the terms of this Agreement. No signature

7

is required." A sister district court in the Seventh Circuit faced this issue and reached the same conclusion:

> [N]othing in the arbitration agreement required that the agreement be signed. Both the arbitration email and the arbitration agreement were very clear that any employee that wanted to opt out could do so, but if the employee did not opt out by the deadline, they would be bound by the arbitration agreement. Plaintiff did not opt out of the agreement by the deadline, and therefore assented to the terms of the agreement.

*Versmesse v. AT&T Mobility LLC*, No. 3:13 CV 171, 2014 U.S. Dist. LEXIS 27816, at *16-17 (N.D. Ind. Mar. 4, 2014) (internal citations and footnote omitted). *See Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999) (applying Wisconsin law) ("Michalski had an opt-out provision. She was free not to arbitrate; she was given a choice and she chose--by not signing the opt-out provision--to be bound by the [arbitration agreement].").

Plaintiff next argues that he cannot be forced to arbitrate because the Agreement lacks consideration. The Indiana Supreme Court recently explained the concept of consideration in some detail:

> To constitute consideration, there must be a benefit accruing to the promisor or a detriment to the promisee. A benefit is a legal right given to the promisor to which the promisor would not otherwise be entitled. A detriment on the other hand is a legal right the promisee has forborne. The doing of an act by one at the request of another which may be a detrimental inconvenience, however slight, to the party doing it or may be a benefit, however slight, to the party at whose request it is performed, is legal consideration for a promise by such requesting party. In the end, consideration -- no matter what its form -- consists of a bargained-for exchange.

*Ind. Dep't of State Revenue v. Belterra Resort Ind., LLC*, 935 N.E.2d 174, 179 (Ind. 2010) (internal citations and quotation marks omitted). Defendant responds that

8

Plaintiff's continued employment constituted consideration for his assent to the Agreement. Defendant's argument does find support in the Seventh Circuit's decision in *Gibson v. Neighborhood Health Clinics*: "An employer's specific promise to continue to employ an at-will employee may provide valid consideration for an employee's promise to forgo certain rights." 121 F.3d 1126, 1132 (7th Cir. 1997). However, the *Gibson* court went on to explain,

> NHC never made a promise to continue Gibson's employment in exchange for her promise to submit claims to arbitration. That is, it never communicated to her that if she signed the Understanding she could continue to work there, and that if she did not her status would be uncertain. It is true that NHC continued to employ her. Yet when an employer has made no specific promise, the mere fact of continued employment does not constitute consideration for the employee's promise.

*Id.* This case is similar to *Gibson* because neither party contends that Defendant made a specific promise to continue Plaintiff's employment if he agreed to arbitrate future claims. In fact, the Agreement specifically provides that the contract "does not in any way alter the 'at will' employment status of Associate." The Agreement further states, "Both the Company and Associate are free to terminate the employment relationship at any time for any lawful reason, and employment is not for any specific definite duration." Plaintiff's continued employment with Defendant did not constitute consideration for the Agreement.

However, the court agrees with Defendant's alternative theory–that the mutual agreement to be bound by the arbitration process serves as adequate consideration. According to *Gibson*, "Often, consideration for one party's promise to arbitrate is the other party's promise to do the same." *Id.* at 1131.

9

This court has held likewise: "In the context of pre-dispute arbitration agreements, an employer gives sufficient consideration when it bargains for an employee's promise to arbitrate in exchange for the its [sic] assent to be bound by the arbitrator's decision." *Flynn v. AerChem, Inc.*, 102 F. Supp. 2d 1055, 1060-61 (S.D. Ind. 2000). *See Cummins v. Town & Country Ford, Inc.*, No. 3:10-cv-134-RLY-WGH, 2011 U.S. Dist. LEXIS 40407, at *6 (S.D. Ind. Apr. 13, 2011) (holding that the arbitration agreement "was supported by consideration" because both the employer and the employee agreed to submit to arbitration); *Nuzzi v. Coachmen Indus.*, No. 3:09 CV 116, 2009 U.S. Dist. LEXIS 107463, at *11-12 (N.D. Ind. Nov. 16, 2009) ("[T]he fact that the employer is willing to give up its own legal right to defend itself in court, and submit its defense to arbitration, constitutes consideration.").

    Plaintiff does not contest that Defendant is also bound to arbitrate, and nor could he.  The Agreement unambiguously states that both parties to the contract waived their rights to a jury trial and are required to submit all claims arising out of the employment relationship to binding arbitration.  On that ground alone, the court can reject Plaintiff's consideration argument.  *Flynn*, 102 F. Supp. 2d at 1060-61.  Additionally though, by waiving the right to have a jury trial, both parties have suffered a detriment because they have given up a significant legal right.  Conversely, there are also benefits accruing to both parties as a result of this waiver, as arbitration is often quicker and cheaper than a jury trial.  These mutual benefits and detriments collectively constitute consideration under Indiana law.  *Belterra Resort*, 935 N.E.2d at 179.  As such, the Agreement is supported by adequate consideration.  The court therefore holds that there is a valid

agreement to arbitrate under Indiana law, meaning that the first element in *Zurich American Insurance Company* is satisfied.

The second requirement that must be met before this court can compel arbitration is that the dispute must fall "within the scope of the arbitration agreement." *Zurich American Ins. Co.*, 466 F.3d at 580. The plain language of the Agreement is very broad in that it covers "any dispute . . . that is related to, arises from, or is in connection with Associate's employment . . . ." As the Seventh Circuit noted, "Arbitration clauses containing language such as 'arising out of' are 'extremely broad' and 'necessarily create a presumption of arbitrability.'" *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 810-11 (7th Cir. 2011) (quoting *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999)). Whereas this is unquestionably a dispute that is related to Plaintiff's employment, this action is within the scope of the arbitration provision contained within the Agreement. Moreover, the Agreement explicitly states, "The arbitration requirement set forth in this Agreement applies to . . . claims arising under Title VII of the Civil Rights Act of 1964 . . . ."

Lastly, a party seeking to compel arbitration must demonstrate "a refusal by the opposing party to proceed to arbitration." *Zurich American Ins. Co.*, 466 F.3d at 580. This refusal is evident by Plaintiff's briefing on this motion.

Whereas the three elements outlined in *Zurich American Insurance Company* have been satisfied, this court hereby **COMPELS** Plaintiff to arbitrate this matter pursuant to 9 U.S.C. § 4. 466 F.3d at 580.

### C. Proper Disposition of Plaintiff's Action

Defendant argues that in addition to compelling arbitration, this court should dismiss the case for lack of subject matter jurisdiction or, in the alternative, stay the matter pending the outcome of arbitration. Plaintiff rightly responds that dismissal is inappropriate. Pursuant to 9 U.S.C. § 3, the court must stay, not dismiss, this action. *See Shearson/American Express v. McMahon*, 482 U.S. 220, 226 (1987) ("[A] court *must* stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement.") (citation omitted) (emphasis added); *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007) ("For arbitrable issues, a § 3 stay is *mandatory*.") (emphasis added).

The Seventh Circuit explained that a stay "is the normal procedure when an arbitrable issue arises in the course of a federal suit" because, in addition to being required under § 3 of the FAA, it "spare[s] the parties the burden of a second litigation should the arbitrators fail to resolve the entire controversy." *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002). *See Kawasaki Heavy Indus. v. Bombardier Rec. Prods.*, 660 F.3d 988, 997 (7th Cir. 2011) (noting that a district court "retains jurisdiction" under a § 3 stay in order to "effectuate the decision of an arbitrator").

Therefore, Plaintiff's action is hereby **STAYED** pending completion of the arbitration.

### D. Costs and Attorney's Fees

As a part of its Motion to Compel Arbitration, Defendant seeks the costs and attorney's fees associated with filing the motion and briefs. Indiana traditionally follows

the American Rule on attorney's fees, meaning that "both parties generally pay their own fees." *Loparex, LLC v. MPI Release Techs., Inc.*, 964 N.E.2d 806, 815 (Ind. 2012). However, parties "may certainly agree by contract to do otherwise." *Reuille v. E.E. Brandenberger Constr., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008). Indiana courts enforce fee-shifting agreements "as long as they are not contrary to law or public policy." *Smith v. Foegley Landscape, Inc.*, 30 N.E.3d 1231, 1239 (Ind. Ct. App. 2015).

The Agreement provides, "To the extent permitted by law, the party prevailing on a motion or petition to compel arbitration may recover the attorneys' fees and costs of bringing or defending the motion or petition to compel arbitration." Plaintiff states that the fee-shifting provision is, at most, discretionary. The court agrees: "The word 'may' customarily connotes discretion." *Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 346 (2005). However, Plaintiff's only argument in support of the court exercising discretion is that he was unaware of the Agreement when he filed suit. Even assuming, *arguendo*, that this is true, Defendant still gave Plaintiff a fair opportunity to dismiss his lawsuit and avoid paying fees. Attorneys for both parties exchanged a series of five e-mail messages wherein counsel for Defendant explained that Plaintiff was required to arbitrate this matter pursuant to the Agreement. (Filing No. 15-3, E-Mail Exchange). Defendant's counsel provided legal authority for her position, and then expressly stated that Defendant would seek attorney's fees if Plaintiff refused to dismiss the lawsuit. Despite this, Plaintiff opted to try his luck in court. That was unwise. Whereas the Agreement allows for fee-shifting and Defendant gave Plaintiff fair warning of its intent

13

to file this motion, the court **ORDERS** Plaintiff to reimburse Defendant for its reasonable attorney's fees and costs.

**IV. Conclusion**

For the foregoing reasons, the court **GRANTS** Defendant's Motion to Compel Arbitration. (Filing No. 14). Therefore, Plaintiff is **COMPELLED** to arbitrate this matter, Plaintiff's action before this court is **STAYED** pending completion of such arbitration, and Plaintiff is **ORDERED** to reimburse Defendant for its reasonable attorney's fees and costs. Defendant shall file an updated affidavit regarding attorney's fees and a bill of costs within fourteen days of this entry.

**SO ORDERED** this 25th day of September 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.